# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORNELIUS WINFREY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: **3:09-cv-00461-JPG-PMF** ) |
| ROGER E. WALKER, JR., *et al.*, | ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is the defendants' motion for summary judgment (Doc. 67). The plaintiff has filed a response (Doc. 71), and the defendants have filed a reply (Doc. 72). For the following reasons, it is recommended that the defendants' motion for summary judgment (Doc. 67) be granted.

### I. BACKGROUND

The plaintiff, Cornelius Winfrey, was severely injured in a motorcycle accident in the late 1980s. Winfrey is an inmate in the custody of the Illinois Department of Corrections. He was transferred to Pinckneyville Correction Center ("Pinckneyville") on December 24, 2007 and recalls significantly re-injuring his back after slipping and falling in the shower and "on the walk." Doc. 1 at 14. Winfrey filed this lawsuit pursuant to 42 U.S.C. § 1983 ("Section 1983") on June 18, 2009 alleging violations of his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution. He alleges that from the time of this transfer until January 29, 2008, prison officials at Pinckneyville continually ignored his complaints regarding his serious back injury.

1

The Court screened the complaint on February 2, 2010, pursuant to its authority it 28 U.S.C. § 1915A and allowed Winfrey's several of claims to go forward against five defendants. *See* Doc. 7 at 5. Two defendants, including defendant Dr. Obadina, were subsequently dismissed without prejudice for failing to effectuate service upon them. *See* Docs. 60, 63-64. The remaining defendants are all nurses who were employed at Pinckneyville during the relevant time period of Winfrey's allegations in this case. Winfrey alleges that the remaining defendant nurses deliberately ignored his complaints and sick call slips regarding his back injuries. *See* Doc. 1 at 16. The three specific complaints regarding the remaining defendants are that they ignored Winfrey's reports regarding 1) slipping and falling, 2) the need for a back brace and cane, and 3) lack of access to special, disabled-accessible amenities. *See id*. at 16-17. Two of these specific deliberate indifference claims have been dismissed from this lawsuit because Winfrey did not properly exhaust his administrative remedies. *See* Docs. 55, 58. The only remaining claim is that the remaining defendants were deliberately indifferent to the serious medical needs of Winfrey when they ignored his complaints regarding access to disabled-accessible amenities at Pinckneyville. *See* Doc. 68-1 at 6. The remaining defendants filed the instant (Doc. 67) motion for summary judgment on December 19, 2011.

## II. DISCUSSION

The remaining defendants argue that they are entitled to summary judgment because they did not have the authority to grant Winfrey access to disabled-accessible amenities and, therefore, were not personally involved in the denial, as required by claims brought pursuant to Section 1983. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v.*

2

*Hayes Wheels Int'l-Ind., Inc*., 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. In order to defeat summary judgment, the nonmoving party must do more than raise a metaphysical doubt as to the material facts. *Keri v. Board of Trustees of Purdue Univ*., 458 F.3d 620, 628 (7th Cir. 2006), *cert. denied*, 549 U.S. 1210, 127 (2007), (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)). Rather, he "must come forward with specific facts showing that there is a genuine issue for trial." *Id.*

Winfrey is proceeding in this case pursuant to Section 1983. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). Even gross negligence by a defendant in a 1983 action does not rise to level required for a constitutional violation in a 1983 action. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). A defendant in a Section 1983 "must in other words act either knowingly or with deliberate, reckless indifference." *Id*. at 992-93 (citing *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985); *United States v. Cerro*, 775 F.2d 908, 911 (7th Cir. 1985); *Slakan v. Porter*, 737 F.2d 368, 373-75 (4th Cir. 1984)).

Winfrey has alleged that the remaining defendant nurses were deliberately indifferent to his serious medical needs in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment. The Seventh Circuit Court of Appeals recently summarized the applicable law of this Circuit with regard to Eighth Amendment claims for inadequate medical care as follows:

"As we recently have stated,

> The Eighth Amendment's prohibition against cruel and unusual punishment, which embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle [v. Gamble]*, 429 U.S. [97,] 102 [97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ] (quotation marks omitted). It thus requires that the government provide "medical care for those whom it is punishing by incarceration." *Id*. at 103 [97 S.Ct. 285]. The Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." *Id*. Accordingly, "deliberate indifference to serious medical needs" of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution. *Id*. at 104 [97 S.Ct. 285].
>
> *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (parallel citations omitted).

A successful deliberate indifference claim is comprised of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). First, an inmate must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when an inmate demonstrates that his medical need itself was sufficiently serious. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Notably, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Second, an inmate must establish that prison officials acted with a " 'sufficiently culpable state of mind' " to support liability under § 1983. *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care. *Walker*, 293 F.3d at 1037. "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653.

*Roe*, 631 F.3d at 856-57.

The remaining defendants have submitted a transcript of Winfrey's November 3, 2011, deposition as support for their argument that the defendant nurses were not personally involved in the decision to deny Winfrey disabled-accessible amenities. *See* Doc. 68-1. The transcript provides some clarity as to Winfrey's claim against the remaining defendants. The transcript provides, in pertinent part, as follows:

> Q. And through the motion practice, we have narrowed the issues in this case down to your access to an ADA shower or a special shower?
> A. Yes.
> Q. Okay. Were you ever allowed access to a special shower at Pinckneyville Correctional Center?
> A. No.
> ...
> Q. Okay. Tell me what the difference is in your mind between an ADA shower and a regular shower at the Pinckneyville Correctional Center?
> A. A regular shower at Pinckneyville, doesn't have ADA assessments like handles on the wall where you can hold onto or a chair you can bring it in and sit down to use a proper shower.
> Q. Anything else?
> A. No.
> …
> Q. Okay. And you did make the request to have access to the special ADA shower at Pinckneyville, correct?
> A. Yes, I did.
> Q. Were you then referred to a physical therapist? Do you recall seeing a physical therapist at Pinckneyville Correctional Center?
> A. Yes.
> Q. Okay. Do you remember what that physical therapist's name was?
> …
> Q. Would it be Dan Vaut, V-A-U-T? Would that be the physical therapist's name?
> A. Dan, what is his name? No, that would be -- oh, what was the gentleman's name? I have his name. I don't have it on me, but I know his first name was Dan something.
> Q. Okay. And you were referred to that physical therapist by Dr. Obadina, correct?
> A. Yes.
> Q. Dr. Obadina was the physician who was handling your care at that time, correct?
> A. Correct.
> …

> Q. Okay. Do you have any information that as a nurse, *Mary Beth Lane*, had the authority to allow you into the ADA cell or order that you be allowed into the ADA cell or ADA shower, I'm sorry?
> A. Right. No, I -- when I wrote the complaint, you know, like, not like a complaint but a request, I was asking her because they don't do nothing but take the requests and give it to the doctor.
> Q. Okay.
> A. They are not allowed to do anything. Only thing they do is just say well, okay -- they will look at the request and say okay, we will pass it over to the doctor, make appointments for us to be seen by the doctor.
> Q. Would that be the same for all three nurses, *Ms. Lane, Rogers and Hill*? They would just receive the request, and it would be up to the doctor to make the decisions, right?
> A. Correct, the decision.
> …
> Q. Okay. Do you know how many requests you sent to be allowed the ADA shower while at Pinckneyville?
> A. I don't know, 10, 20.
> …
> Q. Okay. And you are aware that the physical therapist found that there was no reason for you to be allowed into the physically challenged shower?
> A. Yes.
> Q. Okay. And you are aware Dr. Obadina agreed with the physical therapist's assessment?
> A. Yes.
> ...

*Id*. at 6-11. The transcript reflects an admission by Winfrey that the role of the remaining defendant nurses in this lawsuit was limited to that of a messenger between Winfrey and the actual decision-makers regarding his access to disabled-accessible amenities. *See id*. at 9-10. It is also clear that the ultimate decision to deny Winfrey disabled-accessible amenities in this case would be made by Dr. Obadina.

Winfrey responds to the defendants' motion for summary judgment by focusing his attention on the substance of the underlying Eighth Amendment claim. He highlights the delay in receiving treatment for his back injury and asserts that even a layperson would be able to perceive the need for medical treatment. Winfrey takes the position that the defendant nurses in

6

this case acted with deliberate indifference towards his requests for help. Winfrey asks the Court to consider a Seventh Circuit Court decision involving prison nurses, *Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010), in support of his position. In *Gayton*, the Seventh Circuit reversed a District Court decision granting summary judgment because an issue of material fact existed for trial when there was evidence to suggest that a defendant nurse refused to treat or even see a prisoner who was suffering from a serious vomiting condition. *See id*. at 623-24. The *Gayton* court observed that there was evidence to suggest that the defendant nurse had subjective knowledge of a serious risk of harm to the prisoner and deliberately disregarded that risk when she decided to do nothing to help the prisoner's serious vomiting condition because it was near the end of her shift and she wanted the next nurse to deal with the problem. *See id*. at 624. Finally, the *Gayton* court concluded that a jury could easily conclude that the defendant nurse's inaction surpassed mere negligence into the realm of deliberate indifference because a prison guard had filed a complaint against the nurse as a result of her inaction, and the guard's testimony suggested that even a layperson would be able to recognize that the prisoner's condition was serious. *See id*. (citing *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008).

Even construing the record most liberally for Winfrey, there is simply to no evidence to support the position that the remaining defendant nurses deliberately or recklessly disregarded Winfrey's back issues. Winfrey did speculate that he made 10-20 requests to the defendant nurses to consult Dr. Obadina regarding access to disabled-accessible amenities. *See* Doc. 68-1 at 10. Unlike the Seventh Circuit's decision in *Gayton*, however, it is apparent from the deposition transcript here that the defendant nurses did not deliberately disregard Winfrey's requests or refuse to help him because Winfrey was consulting with Dr. Obadina and a specialist regarding the issue. *See id*. at 8-10. Winfrey has admitted that the defendant nurses' role in his treatment

7

was limited to that of a messenger, and it is apparent that Dr. Obadina was receiving the messages. *See id*. at 9-10. Winfrey has not submitted any evidence that would lead the Court conclude that there was an intentional or reckless delay in relaying information to Dr. Obadina in this case. The Court cannot even infer basic negligence from the facts before it. The evidence provided by the defendants demonstrates that the defendant nurses properly performed their function by informing Dr. Obadina of Winfrey's condition, who, as noted above, made the ultimate decision to deny Winfrey disabled-accessible amenities. Winfrey, quite simply, has not come forward with specific facts regarding an improper delay by the remaining defendant nurses that would establish that a genuine issue of material fact exists for trial. *See* FED. R.CIV. P. 56(c)(1). A moving party is entitled to judgment as a matter of law when a nonmoving party completely fails to offer proof concerning an essential element of his claim in which he holds the burden of proof. *See Celotex Corp*., 477 U.S. at 323.

Summary judgment for the remaining defendant nurses is appropriate under the facts before the Court. Winfrey has not demonstrated that a genuine issue of material exists for trial regarding whether the remaining defendant nurses were personally involved in the alleged deprivation of Winfrey's constitutional rights, as required by a Section 1983 claim. *See Jones*, 856 F.2d at 992-93 ("[A Section 1983 defendant must] act either knowingly or with deliberate, reckless indifference."). Similarly, Winfrey has failed to demonstrate a genuine issue of material fact exists for trial regarding whether the defendant nurses in this case acted with a sufficiently culpable state of mind, as required by a cruel and unusual punishment claim under Eighth Amendment. *See Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) ("Deliberate indifference is more than negligence and approaches intentional wrongdoing … [and] is essentially a criminal recklessness standard, that is, ignoring a known risk."); *see also, e.g., Williams v. Guzman*, 346

Fed.Appx. 102, 106, 2009 WL 3198745, 4 (7th Cir. 2009) (affirming grant of summary judgment in an unpublished decision when there was no evidence that defendant nurses acted with a culpable state of mind because they played no part in the doctors' treatment decisions, and nothing in the record suggested that they had authority to refer inmates to outside specialists) (citing *Snyder*, 444 F.3d at 586; *Comstock v. McCrary*, 273 F.3d 693, 712 (6th Cir. 2001); *Camberos v. Branstad*, 73 F.3d 174, 177 (8th Cir. 1995)).

## III. RECOMMENDATION

For the forgoing reasons, it is recommended that the defendants' motion for summary judgment (Doc. 67) be granted. If this recommendation is adopted in its entirety, there will be no further issues requiring the Court's attention in this case.

**SO RECOMMENDED.**

**DATED: March 2, 2012.**

*/s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**